VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

BRYAN POLLI,

      Plaintiff,

v.

WHITE PINES, INC.,
D/B/A L.A.'S NIGHT CLUB                   CL 18 - 1 3 3 3

      Defendant.

Serve: Richard F. Shurtz, Registered Agent
        2501 La Mirage Court
        Virginia Beach, VA 23456

JURY TRIAL DEMANDED

## COMPLAINT

To the Honorable Judges of this Court:

COMES NOW, Plaintiff BRYAN POLLI, by counsel, and as and for his Complaint

against Defendant WHITE PINES, INC., d/b/a L.A.'S NIGHT CLUB, alleges as follows:

## PARTIES

1.     BRYAN POLLI is an individual over the age of 21, and presently residing in

Rappahannock County, Virginia.

2.     WHITE PINES, Inc., is a corporation established under the laws of the

Commonwealth of Virginia, and is the owner of the business and premises known as L.A.'s

Night Club, a local strip club.

1

## JURISDICTION AND VENUE

3.     This Court has jurisdiction to hear this matter because the claims herein arose from injuries suffered by Plaintiff Bryan Polli ("Plaintiff" or "Mr. Polli") on the premises of L.A.'s Night Club ("L.A.'s") and while working for Defendant White Pines, Inc. ("Defendant" or "White Pines" or "Owner"), located in the Commonwealth of Virginia.

4.     Venue is proper in this Court because the events or omissions giving rise to the claim occurred in the City of Virginia Beach, Virginia.

## FACTUAL BACKGROUND

5.     Mr. Polli began working for Defendant at or around November 2009.

6.     Mr. Polli's initial position was as a cook, he was then promoted to Kitchen Manager, Bartender, Bar Manager, then ultimately in February 2014 he was promoted to Manager.

7.     All work Mr. Polli performed for White Pines took place at L.A.'s. White Pines scheduled his work hours and supervised and controlled his work product.

8.     Mr. Polli's primary form of compensation from White Pines was in cash "under the table" either from the business cash flow or out of the owner's pocket.

9.     Mr. Polli was never provided employee status. He was not even provided a 1099 as an independent contractor, until 2016.

10.     During his seven years working at L.A.'s, Mr. Polli observed an average of 3 or 4 incidents of violence a month. White Pines would request the help of police approximately one time per month after the incidents of violence escalated beyond the control of the security personnel on the premises.

2

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

11.　　White Pines had a standing policy for its staff to only call the police in emergency situations, preferring that its employees handle dangerous situations without the benefit of law enforcement to avoid drawing negative attention to the strip club.

12.　　On March 22, 2016, a Tuesday, Mr. Polli arrived at L.A.'s for work pursuant to the schedule prepared by his supervisor at approximately 3:40 p.m.

13.　　By the 4:00 p.m. opening time, the following work personnel were at L.A.'s:

　　A.　　Bryan Polli, the manager on duty;

　　B.　　Jason[1], the cook;

　　C.　　Bridget, the bartender;

　　D.　　Elijah, the doorman; and

　　E.　　Dancers (or "entertainers").

14.　　On Tuesdays, White Pines did not schedule waitstaff, including on that date, Juleesa, until 6:00 p.m., and security personnel until 8:00 pm.

15.　　At approximately 6:30 p.m., Juleesa informed Elijah that two unknown customers[2] ("Assailant One" and "Assailant Two," or collectively "the Assailants") were harassing the entertainers by attempting to solicit sex from them and calling them derogatory names.

16.　　Elijah reported Juleesa's complaint to Mr. Polli, as well as the complaint by a different male customer that the two Assailants made him uneasy.

---

[1] Mr. Polli is unsure of many employee last names. All employees will be referred to by first name only until Mr. Polli acquires all last names through the course of discovery.
[2] Although Police eventually arrived on the scene, no charges were filed and Mr. Polli was never informed of the identify of either Assailant

3

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

17.    Prior to March 22, 2016, Mr. Polli had never seen either Assailant.

18.    As was expected by White Pines in his capacity as manager, Mr. Polli asked the Assailants to leave.

19.    Notably, the Assailants were physically intimidating: Assailant One stood at least 6 feet tall with a muscular build, Assailant Two stood even taller at over 6 and a half feet with an overweight build.

20.    In response to Mr. Polli's request to leave, Assailant One refused to leave the premises, then boasted that no one in the strip club could "kick him out" because he was the "biggest person here" and he "could take everyone in here at the same time."

21.    Mr. Polli then instructed Elijah to call the security personnel in early. One of whom, Arthur, arrived approximately 15 minutes later. No other security personnel arrived in time to help.

22.    During the fifteen minutes until Arthur arrived, the Assailants continued to threaten the staff and customers in L.A.'s. The police were not called to assist with the situation.

23.    Once Arthur arrived, Mr. Polli and Arthur once again told the Assailants to leave.

24.    After Assailant One again refused to leave, Arthur instructed him to leave or he would have the police escort him off the property.

25.    Despite Arthur's warning, Assailant One continued to taunt and threaten Arthur, and physically pushed him. A very brief fight ensued between the two. Mr. Polli hurried to Elijah, and called out to him to call the police. Mr. Polli and Jason then ran over to help Arthur, and the three of them eventually subdued the Assailant. Assailant Two left on his own accord at this time.

4

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

26.     While he was subdued, Assailant One agreed to leave the premises and in fact left the strip club.

27.     Mr. Polli, Jason, Elijah and Arthur remained in the front of the premises around the doorman's station (a desk a few feet from the front door) for a few minutes discussing the situation. During this time Arthur informed the others that there was a retractable baton, known as an ASP, inside the front desk, to be used specifically for defense from violent customers.

28.     Approximately three minutes later, the Assailants ran in the front door, swinging their fists wildly. They targeted Jason and Arthur, as they were the two largest employees. Mr. Polli feared for the employees' safety as well as for the safety of all present in the strip club.

29.     Fearing serious injury for Jason and Arthur, Mr. Polli grabbed the ASP and hit Assailant One in the back of the head, attempting to subdue him. Unfortunately, the blow only seemed to further enrage the Assailant, and cause him to focus his wrath on Mr. Polli.

30.     Mr. Polli attempted to retreat and ran back to the interior of the club as Assailant One gave chase while throwing haymakers at Mr. Polli. Mr. Polli was able to hit Assailant One's arms with the ASP a few times. Assailant One then charged Mr. Polli, landing full force punches on his jaw and ribs.

31.     Arthur then tackled Assailant One and pinned him to the ground.

32.     Mr. Polli, Jason, Arthur and an unknown male customer kept Assailant One under restraint until the police arrived.

33.     The police did not arrive on the scene until after the Assailants were restrained. They recommended against pressing charges due to injuries to both parties. They did recommend a restraining order to keep the Assailants from returning to the premises.

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

34. Mr. Polli then informed the owner, Kenny Edwards, of the incident, and requested to leave early because he did not "feel right."

35. While Mr. Polli had no physical signs of injury beyond a cut on his jaw and red marks on his ribs at the time of the incident, he began coughing up blood the next morning and went straight to the hospital.

36. At the hospital, he was x-rayed, and once the results were read, he was then rushed to the trauma center, and prepped for transport to another hospital for emergency surgery. The doctors were able to determine that the punch from Assailant One that hit Mr. Polli in the ribs was powerful enough to implode his lung.

37. He was informed by one of the doctors (while showing Mr. Polli his intake x-ray) that his lung had not only collapsed completely, but that his heart had shifted, and had he not sought medical attention when he did, the injury could have been fatal.

38. Shortly after Mr. Polli was admitted to the hospital, Defendant told Mr. Polli that the Defendant would "help him out" with his medical bills and expenses while he was unable to work.

39. Upon information and belief, Defendant did not pay any of Mr. Polli's medical bills, nor did Defendant provide any other financial assistance to Mr. Polli.

40. As a direct consequence of the incident, Mr. Polli had to undergo several surgeries, and was hospitalized for 11 days. He was released from the hospital early, and before he was completely healed from the surgeries, because he did not have insurance. He was not able to return to work for several months thereafter.

6

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

41.     As a direct consequence of the incident, Mr. Polli has suffered the permanent injury of a severely weakened lung and lung cavity, permanent scarring, permanent damage to his ribs where they were broken in the course of the surgeries, possible long term coronary effects due to the shifting of his heart, and respiratory problems. The doctors informed Mr. Polli that if he were to contract pneumonia or any other illness resulting in fluid in the lungs, there was a possibility that such illness would be fatal.

42.     As a direct consequence of the incident, Mr. Polli has suffered the permanent disfigurement of scarring from the surgeries.

43.     As a direct consequence of the incident, Mr. Polli has incurred in excess of $62,000 in medical expenses. His projected medical expenses are in excess of $200,000.00 for his lifetime.

44.     Defendant never classified Mr. Polli as an employee or even as an independent contractor, until 2016. Defendant never reported the incident to the Workers Compensation Commission.

## COUNT I
## NEGLIGENCE – FAILURE TO SCHEDULE SECURITY GUARDS

45.     Paragraphs 1 through 44 are incorporated as if fully restated herein.

46.     As the company paying Bryan Polli to work as its manager,[3] Defendant White Pines owed him a duty to protect him against the conduct of third parties in the workplace.

---

[3] White Pines illegally and erroneously classified Bryan Polli as an independent contractor. However, under *Peele v. Bright*, 119 Va. 182, 184 (1916) the degree of care owed to an independent contractor is exactly the same as the degree of care owed to an employee. Accordingly, for all negligence claims in this Complaint the distinction is irrelevant.

7

47.     As a strip club with frequent violent incidents from belligerent customers, the attack against him on March 22, 2016 was foreseeable.

48.     By failing to have security guards scheduled at the time of the incident, Defendant breached its duty to Mr. Polli.

49.     Trained security guards could have escorted the Assailants off the premises and ensured that they did not return. They also would have had a better understanding on whether police assistance was required.

50.     As a direct result of Defendant's negligence, Bryan Polli was injured by Assailant One. Mr. Polli has incurred loss of wages, current and future medical expenses, and pain and suffering, for which White Pines is liable.

**COUNT II**
**NEGLIGENCE – FAILURE TO PREVENT ASSAILANTS FROM RE-ENTERING**
**L.A.'s NIGHT CLUB**

51.     Paragraphs 1 through 50 are incorporated as if fully restated herein.

52.     As the company paying Bryan Polli to work as its manager, Defendant White Pines owed him a duty to protect him against the conduct of third parties in the workplace.

53.     As a strip club with frequent violent incidents from belligerent customers, the attack against Mr. Polli on March 22, 2016 was foreseeable. Further, after Assailant One refused to leave, threatened both staff and other customers, and only left under threat that police would be called, his aggravated reentry was foreseeable.

54.     By failing to prevent Assailant One from re-entering L.A.'s Night Club after being kicked out minutes before, Defendant breached its duty to Mr. Polli.

8

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

55.   Defendant had no barrier, nor any way for the doorman to prevent the Assailant's reentry.

56.   As a direct result of Defendant's negligence, Bryan Polli was injured by Assailant One. Mr. Polli has incurred loss of wages, current and future medical expenses, and pain and suffering, for which White Pines is liable.

## COUNT III
## NEGLIGENCE – FAILURE TO CALL FOR POLICE ASSISTANCE

57.   Paragraphs 1 through 56 are incorporated as if fully restated herein.

58.   As the company paying Bryan Polli to work as its manager, Defendant White Pines owed him a duty to protect him against the conduct of third parties in the workplace.

59.   As a strip club with frequent violent incidents from belligerent customers, the attack against Mr. Polli on March 22, 2016 was foreseeable. Further, after Assailant One refused to leave, threatened both staff and other customers, and only left under threat that police would be called, his aggravated reentry was foreseeable.

60.   Defendant had an unwritten policy that the police were not to be called until a situation escalated to an "emergency."

61.   By failing to have a policy in place for notifying the police before a situation escalated into violence, and by failing to call police to the scene until after Assailant One's fight with Arthur, Defendant breached its duty to Mr. Polli.

62.   The police would have deterred and prevented the Assailants from re-entering the strip club and attacking Mr. Polli.

9

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

63. As a direct result of Defendant's negligence, Bryan Polli was injured by Assailant One. Mr. Polli has incurred loss of wages, current and future medical expenses, and pain and suffering, for which White Pines is liable.

## COUNT IV
## ACTUAL FRAUD

64. Paragraphs 1 through 63 are incorporated as if fully restated herein.

65. Defendant, as employer of Mr. Polli, intentionally misrepresented his employment status as independent contractor to defraud Mr. Polli from the protections of the Virginia Workers' Compensation Act, VA Code §§65.2-100 *et. al.* ("VWC").

66. Defendant took affirmative steps to prevent Mr. Polli from recovering for his workplace injury under the VWC by failing to disclose his improper classification as an independent contractor, failing to notify the VWC about his workplace accident, and falsely assuring Mr. Polli that it would pay for his medical expenses resulting from the accident.

67. Defendant's affirmative steps diverted Mr. Polli from making a claim under the VWC.

68. Mr. Polli reasonably relied on Defendant's misrepresentations and has suffered damages because of its actual fraud including loss of wages, current and future medical expenses, and pain and suffering.

## COUNT V
## CONSTRUCTIVE FRAUD

69. Paragraphs 1 through 68 are incorporated as if fully restated herein.

10

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

70.     Defendant, as employer of Mr. Polli, misrepresented his employment status as independent contractor to the Internal Revenue Service as well as the Virginia Workers Compensation Commission.

71.     Defendant, innocently or negligently, took affirmative steps to conceal Mr. Polli's employment status, preventing him from the protections of the Virginia Workers' Compensation Act, VA Code §§65.2-100 *et. al.* ("VWC").

72.     Defendant's misrepresentation diverted Mr. Polli from making a claim for his accident to the VWC.

73.     Mr. Polli reasonably relied on Defendant's misrepresentations and has suffered damages because of its constructive fraud including loss of wages, current and future medical expenses, and pain and suffering.

## COUNT VI
## WORKERS' COMPENSATION CLAIM

74.     Paragraphs 1 through 73 are incorporated as if fully restated herein.

75.     Mr. Polli is entitled to recovery for the accident which took place on March 22, 2016 in his workplace under the Virginia Workers' Compensation Act, VA Code §§65.2-100 *et. al.* ("VWC").

76.     He claims all damages recoverable under the act, including loss of wages, and current and future medical expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the entry of a final order for relief and judgment against the Defendant for:

11

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*

A. $75,000 for current medical expenses;

B. $200,000 for projected future medical expenses;

C. $20,000.00 lost wages;

D. compensatory and consequential damages as may be applicable;

E. emotional distress in the amount of THREE HUNDRED TWO THOUSAND FIVE

HUNDRED DOLLARS ($302,500.00);

F. all costs of this action; and

G. attorney fees incurred;

all as a result of the actions complained of herein, as the statute may provide, and such other and

further relief as the Court may find proper and just.

A JURY TRIAL IS DEMANDED.

Respectfully Submitted,

BRYAN POLLI

By:

Of Counsel

Matthew J. Weinberg, Esquire (VSB # 88664)
**Gunther Law Group**
4646 Princess Anne Road, Suite 101
Virginia Beach, Virginia 23462
Telephone (757) 671-3352
Fax (757) 671-3353
Attorney for the Plaintiff
Matthew@Guntherlaw.com

12

*Bryan Polli v. White Pines, Inc.*
*Virginia Beach Circuit Court*
*Complaint*