

4940 Dominion Boulevard
Glen Allen, Virginia 23060
Phone: 804-377-1260   Fax: 804-377-1280
www.setlifflaw.com

Peter E. Schurig
pschurig@setlifflaw.com

Direct Dial: 804-377-1276
Direct Fax: 804-377-1296

May 31, 2018

File No. 435-005

**BY U.S. MAIL & FACSIMILE: (757) 486-4732**

Louis Napoleon Joynes, II, Esq.
Joynes & Gaidies
502 Viking Drive, Suite 201
Virginia Beach, VA 23452

## COVERAGE DECLINATION LETTER

Re: **Insured:**      **White Pines, Inc. d/b/a LA's Gentlemen's Club**
    **Insurer:**      **Penn-America Insurance Company**
    **Policy No.:**   **PAV0059538**
    **Date of Loss:** **March 22, 2016**
    **File No.:**     **18001754**

Dear Mr. Joynes:

    We are insurance coverage counsel for Penn-America Insurance Company ("Penn-America"), a Global Indemnity Group, Inc. member company, in connection with the above-referenced matter and policy. Global Indemnity Group, Inc. previously acknowledged receipt of this matter. We are writing to notify you that Penn-America has determined that the above-referenced policy does not provide coverage for this matter. Penn-America, therefore, will neither defend or indemnify White Pines, Inc. d/b/a LA's Gentlemen's Club ("White Pines") or any other insured in connection with this matter. The basis for Penn-America's determination is discussed further below.

### Factual Background

    Bryan Polli ("Polli" or "Plaintiff") has filed a lawsuit against White Pines, captioned *Bryan Polli v. White Pines, Inc., D/B/A L.A.'s Night Club*, Case No. CL18-1333 (the "Underlying Lawsuit"), in the Circuit Court for the City of Virginia Beach, Virginia. Plaintiff alleges that he was injured as a result of an assault committed against him by a patron arising out of a physical altercation that took place involving employees and patrons at

SETLIFF||| LAW

May 31, 2018
Page 2

White Pines' place of business on or about March 22, 2016. Plaintiff alleges he began working for White Pines, a strip club, at or around November 2009. Initially, Plaintiff was employed as a cook, and he was then promoted to kitchen manager, bar manager, and ultimately manager. Plaintiff was paid "under the table" in cash, and White Pines supervised and controlled his work product. On the day of the incident, Plaintiff was working in his capacity as manager. At approximately 6:30 p.m., two unknown customers began harassing the entertainers by attempting to solicit sex from them and calling them derogatory names. Plaintiff allegedly asked the two patrons to leave on multiple occasions. However, one patron continued to harass the staff and physically pushed one, after which a brief fight ensued. The police were then called, and Plaintiff and another worker went to subdue the assailant. Both assailants then left the premises, and Plaintiff and two other workers remained in front of the premises. Approximately three minutes later, the two assailants came back and ran into the front door of the establishment targeting two of White Pines' workers. At this time, Plaintiff allegedly grabbed a retractable baton and hit one assailant in the back of the head. This assailant chased Plaintiff and landed several punches to his jaw and ribs. The assailants were ultimately restrained by White Pines' personnel and the police arrived thereafter. The police allegedly recommended against pressing charges due to injuries to White Pines' workers and the assailants. Plaintiff suffered a cut on his jaw and red marks on his ribs at the time of the incident and began coughing up blood the next morning. Plaintiff alleges he suffered a collapsed lung and was told by physicians that his heart had shifted.

Plaintiff alleges negligence on the part of White Pines for failing to schedule security guards at the time of the incident, negligence for failure to prevent the assailants from re-entering White Pines' establishment, and negligence for failure to timely call the police. In addition, Plaintiff alleges actual fraud and constructive fraud on the part of White Pines for intentionally misrepresenting Plaintiff's employment status as an independent contractor, and Plaintiff is also pursuing a worker's compensation claim. Claimant seeks damages for current medical expenses, future medical expenses, lost wages, compensatory and consequential damages, and emotional distress.

**Policy Information**

Penn-America issued Policy No. PAV0059538 to White Pines for the policy period from June 5, 2015 to June 5, 2016.[1] Subject to all of its terms, conditions, exclusions, limitations, and endorsements, the Policy provides Commercial General Liability Coverage with the following Limits of Liability applicable to White Pines' Certificate of Insurance:

- General Aggregate Limit: $2 million

---

[1] Certain potentially pertinent provisions of the Policy are set forth in Appendix of Policy Provisions enclosed with this letter. The omission of any provision(s) of the Policy from the Appendix should not be viewed as a waiver of any rights Penn-America may have with respect to any such provisions, all of which Penn-America expressly and fully reserves.

SETLIFF LAW

May 31, 2018
Page 3

- Products/Completed Operations Aggregate Limit: $2 million
- Each Occurrence Limit: $1 million
- Personal and Advertising Injury Limit: $1 million
- Damage to Premises Rented to You Limit: $100,000 any one premises
- Medical Expense Limit: $5,000 any one person

The Policy includes three coverages: Coverage A – Bodily Injury and Property Damage Liability, Coverage B – Personal and Advertising Injury Liability, and Coverage C – Medical Payments. As discussed more fully below, none of these coverages apply to the Underlying Lawsuit.

## Coverage Analysis

The following discussion is based solely on the information presently available to Penn-America. It is not intended to be exhaustive or exclusive, and Penn-America reserves all of its rights under the terms of the Policy and applicable law, including, without limitation, the right to assert any other defenses to coverage it may discover or that may arise in the future. Please note that the Policy's Insuring Agreements and other Policy provisions referred to in this letter are set forth in pertinent part in the enclosed Appendix of Policy Provisions.

As noted at the outset of this Letter, the Policy does not provide coverage for the Underlying Lawsuit. Plaintiff's allegations do not fall within the scope of any of the Policy's coverages.

The Policy's Coverage A – Bodily Injury and Property Damage Liability is inapplicable to the Underlying Lawsuit for several reasons. First, the "bodily injury" allegedly suffered by Plaintiff was expected or intended from White Pines' standpoint and did not arise out of an "occurrence." Specifically, Plaintiff's alleged injuries were not the result of an accident; rather, they were a direct result of the assailant's intentional conduct meant to cause harm to the Plaintiff. Further, because the intentional acts of the assailant resulted in Plaintiff's alleged "bodily injury," they were expected or intended and excluded from coverage. Coverage A is further inapplicable to the Underlying Lawsuit because it excludes any obligations of White Pines under a worker's compensation, disability benefits or unemployment compensation law. Here, the damages sought by Plaintiff are obligated under the Virginia Worker's Compensation Act. In addition, coverage is inapplicable because Plaintiff's alleged "bodily injury" is excluded from coverage because it arose out of, and in the course of, his employment with White Pines and while performing duties related to White Pines' business. Finally, pursuant to the assault or battery exclusion, Coverage A is inapplicable for damages because of "bodily injury" sustained by Plaintiff because they arose out of an "assault" and/or "physical altercation" on White Pines' premises.

SETLIFF LAW

May 31, 2018
Page 4

Likewise, Coverage C – Medical Payments is inapplicable to the Underlying Lawsuit because they were not reported to Penn-America within one year of the incident and do not apply to any insured except "volunteer workers." Further, Coverage C is inapplicable because the assault and battery exclusion precludes coverage of "medical expenses" arising out of an "assault" or "physical altercation."

Finally, Coverage B – Personal and Advertising Injury Liability does not apply to the Underlying Lawsuit because Plaintiff does not allege any "personal and advertising injury".

### Closing

For all the reasons set forth above, the Policy does not provide any coverage for the Underlying Lawsuit. Penn-America does not waive any rights it may have with respect to any other Policy provisions not cited or relied on above, and Penn-America reserves all of its rights under the terms, conditions, limitations, and exclusions of the Policy and applicable law, to rely upon and enforce additional terms of the Policy, and to disclaim coverage on alternative bases. Neither this letter nor any actions taken by Penn-America or any of its agents shall constitute or be deemed a waiver of any right or defense available to Penn-America under the Policy or applicable law. Penn-America's position with respect to the referenced matter is based upon the information provided to-date and is subject to further evaluation if additional information is provided for its consideration. Finally, while we have endeavored to accurately set forth herein, and in the enclosed Appendix, certain provisions of the Policy, to the extent there is any discrepancy between the terms of the Policy and the contents of this letter, the Policy, and not this letter, is controlling.

If you have any questions regarding the foregoing or this matter generally, please do not hesitate to contact us. Moreover, please contact us as soon as possible if you disagree with Penn-America's coverage determination set forth in this letter. Penn-America will carefully consider any information bearing on coverage that you provide and will promptly advise of any modification of its coverage determination that is appropriate in light of such information. If we do not hear from you within thirty (30) days from the date of this letter, Penn-America will understand that you do not dispute its coverage declination and will proceed to close its file for this matter. Please note Penn-America's file number 18001754 on any correspondence.

Sincerely,

Peter E. Schurig, Esq.

Enclosure

## APPENDIX OF POLICY PROVISIONS[1]

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1 COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . .

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period . . .

**2. Exclusions**

This insurance does not apply to:

    **a. Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **d. Workers' Compensation And Similar Laws**

        Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

    **e. Employer's Liability**

        "Bodily injury" to:

---

[1] Although we have endeavored to accurately set forth in this Appendix certain provisions of the Policy, to the extent there is any discrepancy between this Appendix and the actual provisions of the Policy, the provisions of the Policy, and not this Appendix, are controlling. Moreover, the omission of any provisions of the Policy from this Appendix should not be viewed as a waiver of any rights Penn-America may have with respect to any such provisions, all of which are expressly and fully reserved. We refer you to the Policy with respect to any provisions not set forth in this Appendix.

    **(1)** An "employee" of the insured arising out of and in the course of:
        **(a)** Employment by the insured; or

        **(b)** Performing duties related to the conduct of the insured's business;

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies . . .

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

    **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** On premises you own or rent;

        **(2)** On ways to premises you own or rent; or

        **(3)** Because of your operations;
        Provided that:

            **(a)** The accident takes place in the "coverage territory" and during the policy period;

            **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

    (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  **b.** We will make those payments regardless of fault.

**2. Exclusions**

We will not pay expenses for "bodily injury":

 **a. Any Insured**

  To any insured, except "volunteer workers".

 **b. Hired Person**

  To a person hired to do work for or on behalf of any insured or a tenant of any insured.

 **c. Injury On Normally Occupied Premises**

  To a person injured on that part of the premises you own or rent that the person normally occupies.

 **d. Workers' Compensation And Similar Laws**

  To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**SECTION II – WHO IS AN INSURED**

**2.** Each of the following is also an insured:

 a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

**SECTION V - DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" mean injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

The following endorsements are relevant:

**ASSAULT OR BATTERY GENERAL LIABILITY EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL LIABILITY UMBRELLA**

In consideration of the premium change, it is understood and agreed that this insurance does not apply to liability for damages because of "bodily injury", "property damage", "personal and advertising injury", medical expense arising out of an "assault", "battery", or "physical altercation" that occurs in, on, near or away from an insured's premises:

   1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, patrons or other persons in, on, near or away from an insured's premises, or

2) Whether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition, or

3) Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, failure to warn of the "assault", "battery" or "physical altercation", including but not limited to, negligent hiring, training and/or supervision, or

4) Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons or other persons.

**DEFINITIONS:**

For purposes of this endorsement:

"Assault" means any attempt or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of such injury.

"Battery" means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected. The use of force includes but is not limited to the use of a weapon.

"Physical altercation" means a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute.

All other terms, conditions and definitions of the Policy otherwise apply.

# Transmission Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | Thursday, 2018-05-31 16:52 | | | | 1 |

| Date | Time | Type | Job # | Length | Speed | Station Name/Number | Pgs | Status |
|---|---|---|---|---|---|---|---|---|
| ---------- | ----- | ---- | ----- | ------ | ----- | -------------------- | --- | ---------------- |
| 2018-05-31 | 16:46 | SCAN | 00329 | 5:24 | 9600 | 17574864732 | 10 | OK -- V.29 AR30 |

# SETLIFF LAW

4940 Dominion Boulevard
Glen Allen, Virginia 23060
Phone: 804-377-1260  Fax: 804-377-1280
www.setlifflaw.com

---

**FACSIMILE TRANSMITTAL SHEET**

| Date: May 31, 2018 | Operator: Jamie L. Wilkins-Strack |
|---|---|
| To: **Louis Napoleon Joynes, II, Esq.** | Firm: Setliff Law, P.C. |
| Fax Number: (757) 486-4732 | Telephone Number: (804) 377-1279 |
| From: Peter E. Schurig, Esq.<br>(804) 377-1276 | |
| Total No. of Pages Including Cover: 10 | Subject:<br>  *Coverage Declination Letter*<br> *Insured: White Pines, Inc. d/b/a LA's Gentlemen's Club*<br>*Insurer: Penn-America Insurance Company*<br>*Policy No.: PAV0059538*<br>*Date of Loss: March 22, 2016*<br>*File No.: 18001754* |

☑ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS: