**Rachel S. Gunther, Esq.**
*Principal Attorney*
Licensed in VA & NC

**Matthew J. Weinberg, Esq.**
*Senior Associate*
Licensed in VA & CA

**Gunther LAW GROUP**
Attorneys & Counselors at Law
Offices in Virginia & North Carolina
www.guntherlaw.com

**Virginia Beach, Virginia**
4646 Princess Anne Road Suite 101
Virginia Beach, VA 23462
Telephone: 757-671-3352
Facsimile: 757-671-3353

**Hertford, North Carolina**
147 N. Church St.
Hertford, NC 27944
Telephone: 252-426-2006
Facsimile: 252-426-2004

December 3, 2018

Peter E. Schurig, Esquire
Setliff Law
4940 Dominion Blvd
Glen Allen, VA 23060
Counsel for Penn-America Insurance Company
Telephone #: (804) 377-1276

Re: *Polli v. White Pines, Inc.*
*Demand Letter on Behalf of Bryan Polli*
PAV0059538
Date of Loss: March 22, 2016
File No.: 18001754

Dear Mr. Schurig,

Please review our Demand Letter for damages incurred by Bryan Polli on March 22, 2016 while working for White Pines, Inc. d/b/a LA's Gentlemen's Club ("LA's"). Below please find our theory on liability, application of the policy, current medical damages, lost wages and request for pain and suffering.

Liability

In its response to Plaintiff's Request for Admissions, LA's admitted that on March 22, 2016 Bryan Polli was working as its employee. LA's contests whether Bryan was working as a manager as he claims, but admits he was trained as a cook and a bartender. LA's further admits that non-security personnel such as cooks and managers have participated in neutralizing hostile customers while working in the Club.

On March 22, 2016 at approximately 6:30 p.m. Bryan asked two disruptive LA's customers to leave the premises as required by his job position. The Assailants refused and threatened violence against the club. Bryan then instructed the doorman Elijah to call the security personnel in early as they normally did not arrive until 8:00 p.m. Arthur (one of the security guards) arrived approximately 15 minutes later and informed the Assailants that he would call the police if they did not leave. A brief fight between the Assailants and Arthur then ensued. The Assailants were then subdued and agreed to leave the premises on their own accord.

At no point did Arthur or any other staff member ensure the Assailants had completely left the premises, secure the front door from reentry, or take precautions against the hostile customers who had not only threatened violence, but briefly fought previously. Further, LA's instructed their workers not to call the police to prevent negative attention to towards the strip club. Thus, no one called the police to report the incident.

Bryan, Arthur, Elijah and Jason (the cook) remained at the front door of LA's discussing the situation. Arthur informed Bryan that there was a retractable baton, known as an ASP inside the front desk, which he handed to Bryan who put the ASP in his back pocket.

Approximately three minutes later, the Assailants burst through the front door, swinging their fists wildly. The Assailants quickly had Jason and Arthur overmatched, and Bryan feared for the safety of everyone present in the strip club. Bryan then extracted the ASP and struck Assailant One in the back of the head. The hit enraged the Assailant who landed punches on Bryan's jaw and ribs.

The next morning Bryan awoke coughing up blood and headed straight to the hospital.

*Workers' Compensation*

Bryan timely provided notice of his injuries to his employer, Kenny Edwards. However, at no point did LA's report the incident to the Virginia Workers' Compensation Commission, claiming at the time that he was not a covered employee.

Had LA's acknowledged that Bryan was an employee as they recently admitted, this action would have been covered by the Virginia Workers' Compensation Act ("Act"). "A physical assault may constitute an 'accident' within the meaning of the Act when it appears that it was the result of an actual risk arising out of the employment." *Butler v. Southern States Cooperative, Inc., et al.* 270 Va. 459, 465 (2005) (internal quotations omitted). "Such an accident arises out of the employment if there is a causal connection between the employee's injury and the conditions under which the employer requires the work to be done. *Id.*

LA's admission that its cooks and managers participate in neutralizing hostile customers clarifies that the accident occurred under conditions LA's requires work to be done and Workers' Compensation applies.

Notably, because LA's failed to properly classify Bryan as an employee, it has forfeited the protection from a common-law action under the exclusivity provisions of the Act. *See e.g.*, *Delp v. Berry*, 213 Va. 786, 789 (1973).

*Negligence*

Bryan asserts the following negligence claims against LA's: failure to staff security guards, failure to prevent Assailants from re-entering LA's, and failure to call for police assistance. Had LA's performed these actions, Bryan's injury could have been prevented.

Had the security guards been on staff when the Assailants began getting hostile in the beginning, the security guards could have subdued the situation. By failing to have security on hand, the Assailants gained confidence in their hostility which ultimately led to Bryan's harm.

Moreover, LA's failure to prevent the Assailants from re-entry is the but for cause of Bryan's harm. After the Assailants had already began one fight and made threats to the establishment, LA's had a duty to ensure that they did not have the chance to renter the club as their attempt to cause harm was foreseeable. Instead, the Assailants were able to storm back inside swinging punches wildly. Thus, LA's negligence was the direct cause of Bryan's harm.

Finally, LA's policy of avoiding calls to the police also resulted in Bryan's injury. After the Assailants attacked a security guard the first time, the incident should have immediately been reported to the police who should have been called to the scene. Instead, no employee at LA's reported the incident pursuant to LA's policy of avoiding negative attention from the police. Thus, the police were not at the scene to prevent the Assailants from storming back into the club.

*Contributory Negligence*

An assertion of contributory negligence is likely to fail. Bryan was working within the scope of his employment when dealing with the Assailants. He was solely responsible for dealing with hostile customers when no security guard was present, as none were schedule to arrive until 8:00 p.m. that night. Further, LA's admits that cooks and managers subdue hostile customers. Thus, a defense of contributory negligence is unlikely to succeed.

*Assault and Battery Exclusion to General Liability Policy*

LA's failure to prevent reentry by the Assailants, after they had fought once and threatened the entire club, was the but for cause of Bryan's harm. The Assailants aggressive reentry was foreseeable as they had threatened to do just that. Had LA's simply locked the doors after they had left, or called the police, Bryan would not have been injured. Accordingly, the policy exclusion for assault and battery should not apply.

Further, the General Liability Policy may have an exception to the assault and battery exclusion for defense of persons or property.

<u>To Date Medical Damages</u>

*Bryan Polli Before and After Injury Narrative*

Prior to Mr. Polli's injury, he was able to work long hours, and was able to take side jobs, such as landscaping, helping people move, or small construction jobs. He was able to talk to people (co-workers, customers, etc.) all day.

He was very physically active and athletic. He played pick-up soccer at local parks, would play football or volleyball at the beach, he would swim, surf, longboard, or just spend the day doing activities with his athletic girlfriend and her growing little boy.

He was an active young man, and made the most of his life, working or "playing" for long hours each day. He had a very active sex life. He worked out regularly and was able to maintain a healthy body weight of 150 pounds.

Directly after his injury, at the hospital he felt the worst pain he can remember, feeling as if he were being ripped apart from the inside. He was not able to breathe normally or even fully catch his breath, and he always felt "one breath behind." He lost 50 pounds in the 11 days he was in the hospital.

He was released early, due to his lack of health insurance. After his release, he was told to stay on bed rest. He suffered pain in his chest and the majority of his body. Every movement and every breath hurt. He had to make an effort to breathe shallowly, because deep breaths hurt. He had difficulty sleeping, as he could only sleep in one position without pain, and movement in his sleep would wake him to incredible pain. He had trouble eating enough, because the "full" sensation would trigger pain. Using his right arm hurt his chest. It took him two months just to be able to breathe normally, and had to do daily exercises to assist him just to breathe. Any sexual activity was impossible.

Mr. Polli's injuries were permanent, and will have a lasting effect upon the remainder of his life:

<u>Heart Displacement</u>: When he gets too excited or does too much activity, his chest hurts and he can feel his heart beating right through his chest. This makes it hard for him to breathe, sends icepick sensations through his entire abdominal area, and his pectoral area. The pain makes it difficult for him to even talk. Indigestion makes him feel as if gas is pressing against his heart and lungs.

Mr. Polli now suffers from poor circulation issues, losing circulation in random parts of his body. Bending his right wrist a certain way makes him lose circulation in his hand or squeezing something makes him lose circulation in his thumb.

He is unable to tolerate heat. He used to take hot showers, but now the heat and steam make him too dizzy.

<u>Lung</u>: Trying to breathe frequently causes shooting pains in the center of his chest and on his right side from under the armpit to his ribcage. He does not have sufficient lung capacity anymore. When he is breathing, he is aware that only his left (uninjured) lung is inflating and deflating properly. He always feels short of breath, yawning a lot more, trying to get oxygen.

Talking for any extended length of time (15 minutes or more) makes him out of breath. Coughing hurts, hiccups hurt, sneezing hurts. He does not have the lung capacity to participate in sports or swim as he used to. It is very hard for him to have sex when he cannot catch his breath.

At the hospital, the doctors at the hospital warned him that any time he get even just a cold, he has to go to the hospital, so that they can treat him, because any upper respiratory infection he gets will most likely result in pneumonia, and if he gets pneumonia, it could kill him (even though it is treatable, and usually is not fatal).

The doctors also told him that if he takes another impact to his chest, it could be fatal (a punch, a fall, an airbag, etc.).

<u>Anxiety</u>: Being anxious physically hurts him now. Seeing people much bigger than he is that he do not know causes him anxiety. Aggressive behavior in social areas causes him anxiety. He cannot work in a job where he has to worry about physically aggressive clients/guests/customers. He gets anxious because he cannot perform simple tasks the way he is supposed to. He is anxious and overprotective of his chest area.

<u>Fatigue</u>: Simple tasks cause him fatigue. He has to nap a lot, and frequently has to nap in order to have the energy to do things like cooking dinner. Simple tasks such as mowing the lawn (on a riding mower) which he could do before in an hour now takes 3 - 4 hours, as he can only do things in smaller increments. Any physical activity has to be broken up into blocks. (Example: He can carry groceries into the house, but then may not be able to put them away until after he has rested.) His sex life sex went from active and frequent to inactive and infrequent.

Mr. Polli is the primary caretaker of his girlfriend's son, but he cannot keep up with a growing boy. Mr. Polli feels that he is always disappointing her son because her son can

remember when Mr. Polli could run around with him all day before - why not now? Mr. Polli cannot "roughhouse" with him because it causes Mr. Polli pain.

<u>Pain generally</u>: Standing too long or even sitting down too long causes pain. Twisting or reaching can cause extreme pain.

*Medical Bills*

 Sentara Independence: 3/23/16 = $7374.26

 Sentara Princess Anne Hospital: 3/23/16 thru 3/28/16 = $13,598.77

 Medical Center Radiologists, Inc: 3/23/16 – 5/04/16 = $400

 Emergency Physicians of Tidewater-Sentara Independence: 3/23/16 = $1,208

 Sentara Leigh Hospital: 3/28/16 thru 4/2/16 = $33,873.88

 Hampton Roads Radiology Associates: 3/24/16 thru 3/28/16 = $456

 Atlantic Anesthesia, Inc.: 3/29/16 = $4075

 Sentara Leigh Hospital: 4/13/16 thru 5/4/16: $684

 <u>TOTAL:</u> $61,669.91

<u>Lost Wages</u>

 Directly after the injury Bryan Polli was unable to work for 6 months at approximately $3000 per month equal to $18,000.

 Six months after the injury, Bryan began working Wells Fargo, where he was forced to take off 30 days due to his injury equal to a total of $4154.40 of lost wages.

 <u>TOTAL:</u> $22,154.40

<u>Total Damages Demand</u>
 Medical = $61,669.91
 Lost Wages = $22,154.40
 Costs = $327.61
 Attorney Fees = $35,000

6

Pain and Suffering = $589,063.44

*Total* = $708,542.36

Please confirm receipt of this demand. I am amenable to discuss resolution of this matter in more detail, please contact my office to set up a telephone conference.

Very truly yours,

Matthew Weinberg