IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**PENN-AMERICA INSURANCE COMPANY,**

    **Plaintiff,**

v.                                                                                       **Civil Action No. 3:18cv650**

**WHITE PINES, INC. d/b/a**
**L.A.'s NIGHT CLUB,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on three motions, two of which this Court will decide:[1] Defendant-Intervenor Bryan Polli's Motion to Intervene (the "Motion to Intervene"), (ECF No. 9), and Polli's Motion to Dismiss for Improper Venue or to Transfer to the Norfolk Division (the "Motion to Transfer"), (ECF No. 11). Plaintiff Penn-America Insurance Company ("Penn-America") responded to the Motion to Transfer, (ECF No. 12), but did not respond to the Motion to Intervene.[2] Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to

---

[1] Polli's Motion to Set Aside Entry of Default Judgment also pends. (ECF No. 10.) Because the Court will transfer the action to the United States District Court for the Eastern District of Virginia, Norfolk Division, the Court considers it more appropriate for the Norfolk Division to rule on that more substantive motion.

[2] Polli did not reply to Penn America's Response to the Motion to Transfer. Defendant White Pines, Inc. ("White Pines") did not file a response to either the Motion to Intervene or the Motion to Transfer. The time to file any response or reply brief has expired.

28 U.S.C. § 1331.[3] For the reasons that follow, the Court will grant the Motion to Intervene and the Motion to Transfer.

## I. Procedural and Factual Background

### A. Procedural Background

On September 24, 2018, Penn-America filed the Complaint in this Court seeking a declaration that it has no duty to defend or indemnify White Pines under a commercial general liability policy (the "Policy") Penn-America issued to White Pines. White Pines failed to respond to the Complaint by October 29, 2018.[4] On November 1, 2018, Penn-America requested the clerk to enter default against White Pines based on White Pines' failure to respond to the Complaint. On November 16, 2018, the clerk entered default against White Pines. On December 5, 2018, Polli filed the Motion to Intervene, the Motion to Transfer, and the Motion to Set Aside Entry of Default. Polli attached to the Motion to Intervene a Proposed Answer and Counterclaim. Penn-America responded to the Motion to Transfer and the Motion to Set Aside Entry of Default.

### B. Factual Background[5]

On March 22, 2018, Polli filed a lawsuit in the Circuit Court for the City of Virginia Beach (the "Virginia Beach Circuit Court") against White Pines, seeking to hold White Pines liable for bodily injury Polli suffered while working as a manager for L.A.'s Night Club. White

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Penn-America's Complaint seeks a declaration that Penn-America has no duty to defend or indemnify White Pines under its insurance policy pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

[4] Penn-America served White Pines on October 8, 2018.

[5] Because Polli's Motion to Transfer and Motion to Intervene stand before the Court, the Court presents the factual background relevant to these two motions.

2

Pines owned and operated L.A.'s Night Club. After Polli filed his complaint in the Virginia Beach Circuit Court, White Pines contacted Penn-America requesting coverage under the Policy. On May 31, 2018, Penn-America denied coverage under the Policy.

On August 28, 2018, Polli sent a demand letter to Penn-America asserting that coverage for White Pines applied to his injury and requesting coverage and damages. On September 11, 2018, Penn-America responded to Polli's demand by denying coverage. On that same day, Polli notified Penn-America of his intention to file a declaratory judgment action to resolve the matter. He requested a complete copy of the Policy.

On September 24, 2018, Penn-America filed this declaratory judgment action. Penn-America did not notify Polli prior to filing this action and did not send Polli a copy of the Policy. On November 29, 2018, thirteen days after the clerk entered default against White Pines in this matter, Polli learned of Penn-America's declaratory judgment action.

In his Proposed Answer and Counterclaim, Polli seeks a declaration that under the terms of the Policy, Penn-America has a duty to defend and a duty to indemnify White Pines in connection with the case Polli filed in the Virginia Beach Circuit Court.

## II. Motion to Intervene

Polli asks to intervene in this case as a non-party pursuant to Federal Rule of Civil Procedure 24. Polli seeks a declaratory judgment that the Policy Penn-America issued to White Pines covers Polli's claims in Virginia Beach Circuit Court, thereby creating Penn-America's duty to defend and duty to indemnify White Pines in that state court action. Based on the record before it, and lacking any opposition, the Court concludes that Polli timely moved to intervene and that permitting intervention here would not prejudice Penn-America or White Pines. The Court will grant the Motion to Intervene.

A.  **Legal Standard:  Motion to Intervene**

Federal Rule of Civil Procedure 24 offers two avenues for a non-party movant to intervene in a case: (1) intervention as of right; and, (2) permissive intervention. Fed. R. Civ. P. 24. First, a non-party movant may intervene as of right "[o]n timely motion" if the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Under Rule 24 if the movant meets this standard, the Court "must" allow him or her to intervene. Fed. R. Civ. P. 24(a).

Second, the Court may permit intervention "[o]n timely motion" if the non-party movant "has a claim or defense that shares with the main action a common question of law or fact." Fed R. Civ. P. 24(b)(1)(B). When considering a party's motion to intervene pursuant to Rule 24(b), the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Under either standard, the Court must first determine whether the movant timely filed his or her motion to intervene. *See* Fed. R. Civ. P. 24(b)(1). The trial court has sound discretion in deciding timeliness under Rule 24. *See Alt v. United States E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). When evaluating timeliness, the Court must consider three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591; *see also Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.* 117 F. Supp. 2d 508, 514 (E.D.Va. 2000). The most important factor in ascertaining whether a movant timely filed his or her motion to

intervene is "whether the delay has prejudiced other parties." *Spring Constr. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980); *see Hill Phoenix, Inc.*, 117 F. Supp. 2d at 514.

### B. The Court Will Permit Polli to Intervene

Polli seeks permissive intervention under Rule 24(b)(1). The Court finds Polli's Motion to Intervene appropriate because Polli timely filed a motion demonstrating that he "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

First, the Court considers the threshold requirement that a motion for intervention be "timely" filed. Fed. R. Civ. P. 24(b)(1). The Court weighs the following factors: (1) how far the underlying suit has progressed; (2) why the movant was tardy in filing its motion; and (3) the prejudice to existing parties that would result from allowing the intervention. *See Alt*, 758 F.3d at 591. The Court concludes that each of these factors favor permitting Polli to intervene here.

As to the first timeliness factor, the point to which the suit has progressed, nothing suggests that this suit has progressed beyond the time period in which Polli may file a motion to intervene. *See id.* On September 24, 2018, Penn-America filed this declaratory judgment action. On November 16, 2018, the clerk entered default against White Pines after it failed to respond. On December 5, 2018, only nineteen days after entry of default, and fewer than three months after the original filing, Polli filed the Motion to Intervene and his Proposed Answer and Counterclaim. No activity occurred between the entry of default and the Motion to Intervene. Because this litigation remains in its early stages, the first timeliness factor weighs in favor of permitting Polli to intervene.

Under the second timeliness factor, the Court must consider the rationale behind the movant's tardiness in filing its motion to intervene. *See id.* When Penn-America filed this declaratory judgment action, it did not notify Polli, a non-party. Polli indicates that he did not

learn of Penn-America's declaratory judgment action until November 29, 2018. (*Id.* ¶ 8.) Neither Penn-America nor White Pines dispute this claim. On December 5, 2018, just six days after learning about this action, Polli filed the Motion to Intervene. Because Polli filed the Motion to Intervene within a week of learning about the action, the second timeliness factor also weighs in favor of permitting intervention by Polli.

The third timeliness factor requires the Court to consider the prejudice to existing parties which might result from allowing the intervention. *See id.* This third timeliness factor also favors intervention. Neither Penn-America nor White Pines responded to Polli's Motion to Intervene, thereby foregoing any opportunity to argue that Polli's intervention would prejudice either of them. Absent contention to the contrary, the Court cannot find that granting the Motion to Intervene will prejudice either party. Because each of the timeliness factors suggests that Polli timely filed the Motion to Intervene, the Court finds that he did so.

Having determined that Polli timely filed the Motion to Intervene, the Court next assesses whether Polli "has a claim or defense that shares with the main action a common question of law or fact." Fed R. Civ. P. 24(b)(1)(B). The Court concludes that Polli's claim shares with the main action, *Penn-America v. White Pines*, a common question of law.

Polli filed a lawsuit in Virginia Beach Circuit Court against White Pines seeking to hold White Pines liable for bodily injury Polli suffered while working as a manager for L.A.'s Night Club. The declaratory judgment action here—*Penn-America v. White Pines*—seeks a declaration that Penn-America does not have a duty to defend White Pines in the action Polli filed in Virginia state court or to indemnify White Pines for any judgment imposed against White Pines via liability coverage for Polli's injuries. In his Proposed Answer and Counterclaim, Polli seeks a declaration that Penn-America has a duty to defend and a duty to indemnify White Pines

under the Policy. Both the *Penn-America v. White Pines* action as originally filed and Polli's Proposed Answer and Counter-claim will turn on the interpretation of the Policy, meaning they share a common question of law: whether the Policy creates a duty to defend or indemnify White Pines in the action filed in the Virginia Beach Circuit Court. *See* Fed. R. Civ. P. 24(b)(1)(B).

Because Polli timely filed a motion meeting all requirements of Rule 24(b)(1)(B), the Court will grant the Motion to Intervene.

### III. Motion to Transfer Venue

In the Motion to Transfer, Polli moves to dismiss this case for improper venue, or to transfer the case to the United States District Court for the Eastern District of Virginia, Norfolk Division. Based on the record before it, and lacking any opposition, the Court concludes that transferring the case to the Norfolk Division serves the interest of justice.

A. **Legal Standard: Motion to Transfer**

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer a case rests in the district court's sound discretion. *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). A court determining the propriety of a motion to transfer under § 1404(a) follows a two-step inquiry. *Bascom Research, LLC v. Facebook, Inc.*, No. 1:12cv1111, 2012 WL 12918407, at *1 (E.D. Va. Dec. 11, 2012). First, the court determines whether the claims could have been brought in the transferee forum. *Id.* Second, the court considers the following four factors: "(1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Id.* A court's decision to transfer

depends on the particular facts of the case because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor. *Samsung Elecs. Co., LTD. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005).

### B. The Court Will Transfer This Case to the Norfolk Division

The Court finds transfer to the United States District Court for the Eastern District of Virginia, Norfolk Division appropriate here.[6] As an initial matter, Penn-America could have filed this Complaint in the Norfolk Division.[7] The second step in considering a motion to transfer requires the Court to weigh the following four factors: "(1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *See Bascom*, 2012 WL 12918407 at *1. Because the Court concludes that each of

---

[6] The Court will deny Polli's argument asking the court to dismiss the case for improper venue. The Court finds transfer to be the proper remedy as opposed to dismissal. In *Polygroup Ltd. v. Gen. Foam Plastics Corp.*, a court in this Division noted that the venue rules in 28 U.S.C. § 1391 govern the determination of which division within the Eastern District of Virginia constitutes the proper venue under Eastern District of Virginia Local Rule 3(C). *Polygroup Ltd. v. Gen. Foam Plastics Corp.*, No. 3:12cv48, 2012 WL 2554645, at *2–*3 (E.D. Va. June 28, 2012). The *Polygroup* court also observed that under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division . . . shall dismiss, or if it be in the interest of justice, transfer such case to any . . . division in which it could have been brought." *See id.* at *3; 28 U.S.C. § 1406(a). The *Polygroup* court transferred the case to the proper division, rather than dismiss it. *See* 2012 WL 2554645 at *7. Similarly, here, the interests of justice favor transferring this matter to the Norfolk Division, not dismissing it.

[7] In considering a motion to transfer venue, the court must first determine whether the claims could have been brought in the transferee forum. *See Bascom*, 2012 WL 12918407 at *1. The Declaratory Judgment Act invoked by Penn-America here, and Polli in his Proposed Answer and Counterclaim, states in relevant part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The acts undergirding this action largely took place in Virginia Beach, Virginia, within the Norfolk Division, rendering venue there appropriate. 28 U.S.C. § 1391 ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.").

8

these factors favors transferring this action to the Norfolk Division, the Court will grant the Motion to Transfer. *See id.*

As to the first factor, the plaintiff's choice of forum, no evidence before the Court suggests that Penn-America prefers either the Richmond Division or the Norfolk Division. In its Response to the Motion to Transfer, Penn-America did not oppose the transfer of this action to the Norfolk Division for further proceedings.[8]

As to the second factor, convenience of the parties, the Norfolk Division plainly offers greater convenience. It appears that none of the parties reside in or maintain their principal place of business in the Richmond Division. Polli contends that "White Pines' principal office is located in the City of Virginia Beach."[9] (Mot. Transfer, ¶ 15, ECF No. 11.) Penn-America is incorporated in Pennsylvania and has its principal place of business in Pennsylvania. Because no party appears to have any connection to the Richmond Division,[10] White Pines allegedly maintains its principal place of business in the Norfolk Division, and neither White Pines nor Penn-America opposes transfer to the Norfolk Division, the second factor weighs in favor of transfer.

---

[8] Although a court usually weighs a plaintiff's choice of forum heavily in the plaintiff's favor, Penn-America did not oppose the transfer of this matter to the Norfolk Division for further proceedings, asking only that the Court not dismiss the action in lieu of transfer.

Even were the Court to evaluate the Richmond Division as Penn-America's preferred forum, "deference to that forum choice varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." *Bascom*, 2012 WL 12918407 at *1 (quotation and citation omitted). When the plaintiff has only a "weak connection" with the forum, the plaintiff's choice of forum carries little weight. *Id.* On the record before the Court, no connection appears to exist between the Richmond Division and the facts giving rise to this action. For this reason, the first factor weighs in favor of transfer.

[9] White Pines did not respond to Polli's Motion to Transfer, and nothing before the Court contradicts Polli's assertions.

[10] The Court cannot consider Polli's residence because those facts do not appear on the record before the Court.

The third factor, the convenience of and access to witnesses, also favors transferring the action. Polli argues that all events giving rise to the injury at the heart of this declaratory judgment action occurred in Virginia Beach. As such, witnesses to the incident reside in or nearer to the Norfolk Division. The Norfolk Division plainly provides greater convenience, and simpler access, to witnesses.

Finally, the fourth factor, the interest of justice, supports transfer. The events giving rise to the suit transpired in the Norfolk Division. The Norfolk Division is more convenient to parties and to witnesses. Related litigation pends in Norfolk. No factor weighs in favor of proceeding in the Richmond Division, and no party opposes transfer.

Because each of the Section 1404(a) factors weighs in favor of transfer, the Court will transfer the action to the Norfolk Division.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Intervene and the Motion to Transfer. Because the Court will transfer the action to the United States District Court for the Eastern District of Virginia, Norfolk Division, the Court will allow that Court to rule on Polli's Motion to Set Aside Entry of Default Judgment.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 2/1/2019
Richmond, Virginia